O

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

| Present: | The Honorable Philip S. Gutierrez, United States District Judge | |
|---|---|---|
| Wendy K. Hernandez | Not Present | n/a |
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff(s): | Attorneys Present for Defendant(s): |
|---|---|
| Not Present | Not Present |

**Proceedings:** **(In Chambers) Order Granting in part and Denying in part Travelers' Motion for Summary Judgment and Granting in part and Denying in part Cross-Defendants' Motion for Summary Judgment**

Pending before the Court are Plaintiff's Motion for Summary Judgment and Cross-Defendants' Motion for Summary Judgment. The Court finds the matters appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; L.R. 7-15. After considering the moving and opposing papers, the Court GRANTS in part and DENIES in part Plaintiff's Motion, and GRANTS in part and DENIES in part Cross-Defendants' Motion.

I.   Background

On December 18, 2006, Defendants Desert Gold Ventures, LLC ("Desert Gold"), Richard R. Oliphant ("Richard Oliphant"), Janice Oliphant, Dennis D. French ("Dennis French"), and Sharon French (collectively, "Indemnity Defendants")[1] entered into a General Indemnity Agreement ("GIA" or "Indemnity Agreement") with Plaintiff Travelers Casualty and Surety Company of America ("Travelers") in order to secure surety bonds ("the Bonds") for Desert Gold's construction project in Riverside County, California ("the Project").[2] *See Compl.* ¶¶ 18-

---

[1] The other Indemnity Defendants named in the complaint include Northstar Resort Development, LLC, Jurassic Ventures, LLC, the Richard R. and Jan Oliphant Family Trust, the Dennis and Sharon French Family Trust, Michael A. R. Mabugat, and Teresa E. Mabugat.

[2] The Clerk for the United States District Court for the Central District of California entered default against Desert Gold, Jurassic Ventures, Michael A.R. Mabugat and Teresa E. Mabugat on July 1, 2010. *See* Dkt. # 122.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

20. In addition to the Indemnity Agreement, Defendants Top Finance of Arizona, LLC ("Top Finance") and Dynamic Finance of Arizona, LLC ("Dynamic Finance") each entered into separate loan agreements with Desert Gold ("the Set-Aside Agreements"), which required them to set aside over $16 million ("the set-aside funds") of the $54 million loan in a dedicated bank account ("set-aside account") to cover claims against Travelers in the event that Desert Gold defaulted on its obligations. *See id.* ¶¶ 20-24, Exs. B, C.

In order to induce Oliphant's and French's consent to the Indemnity Agreement, Desert Gold allegedly assured them that, due to the set-aside funds, they "would have no financial exposure whatsoever under the Indemnity Agreement." *First Am. Cross-Complaint ("FACC")* ¶¶ 18, 20. After the Indemnity Agreement was signed, however, the "owner and controller" of Top Finance, Cross-Defendant Angela Chen Sabella ("Sabella"), allegedly diverted the set-aside funds for purposes that were not authorized by the Set-Aside Agreement. *See id.* ¶ 45. It is also alleged that Travelers, through its agents and those securing the Bonds, entered into an oral agreement whereby the GIA would not become effective until the set-aside account was fully funded. *Oliphant and French Opp'n.* 2:5-14.

Desert Gold eventually defaulted on its obligations. *See Compl.* ¶ 26. However, when Travelers sought to recover a portion of the set-aside funds, Top Finance failed to transfer the requisite funds pursuant to the Set-Aside Agreement, and Indemnity Defendants failed to indemnify Travelers pursuant to the Indemnity Agreement. *See id.* ¶ 26, 29-30. Travelers sued Indemnity Defendants, Dynamic Finance and Top Finance for breach of contract and related claims.

After the commencement of the action, Cross-Claimants Oliphant and French (collectively, "Cross-Claimants") filed a cross-claim against Cross-Defendants Mabugat, Desert Gold, Top Finance, Paul W. Lewis ("Lewis"), Desert Empire Insurance Services, Inc. ("Empire" or "Desert Empire"), Sabella, and Isaac Lei (collectively, "Cross-Defendants"). *See Dkt #33.* On November 17, 2009, Cross-Claimants filed the First Amended Cross-Claim ("FACC") against Cross-Defendants. *See Dkt #72.* Cross-Defendant Lei filed a motion to dismiss the claims against him and the Court granted his motion in February 2010, dismissing Lei from the lawsuit. *See Dkt. # 101.*

Travelers filed a motion for summary judgment on July 1, 2010, and Cross-Defendants Lewis and Desert Empire filed a motion for summary judgment on July 6, 2010. Both motions are pending before the Court.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

II.      Legal Standard

Federal Rule of Civil Procedure 56(c) establishes that summary judgment is proper only when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). If the moving party satisfies this burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.* at 257. A non-moving party who bears the burden of proving an essential element to its case at trial must sufficiently establish a genuine dispute of fact with respect to that element or face summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). An issue of fact is a genuine issue if it can reasonably be resolved in favor of either party. *See Anderson*, 477 U.S. at 250-51. Furthermore, "a district court has the responsibility to construe all facts in the light most favorable to the non-moving party." *Nelson v. City of Davis*, 571 F.3d 924, 928 (9th Cir. 2009).

III.     Discussion

    A.     Traveler's Motion for Summary Judgment

Travelers filed a motion for summary judgment on all the remaining claims it asserted in the Complaint and on all claims against it. The threshold issue before the Court is the validity of the General Indemnity Agreement between Travelers and the Indemnity Defendants.

        1.     The Validity of the Indemnity Agreement

The common thread tying all of the arguments in the Indemnity Defendants' Opposition together is that the GIA is invalid and that there is no liability for any past, present or future expenses incurred by Travelers related to the Project. More specifically, Indemnity Defendants insist that funding of the set-aside accounts by Top Finance and Desert Finance was a condition precedent to the GIA, and that because funds were never placed into a dedicated set-aside account, the GIA is not enforceable. The Court, however, finds that the GIA is fully enforceable as written and agreed to.

            a.     The General Indemnity Agreement

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Indemnity agreements, under California law, are fully enforceable contracts enabling a surety to "stand upon the letter of his contract, and [have] his undertaking…construed strictly in his favor." *Commercial Ins. Co. v. Pacific-Peru Const. Corp.*, 558 F.2d 948, 953 (9th Cir. 1977); *accord Markley v. Beagle*, 66 Cal. 2d 951, 59 Cal. Rptr. 809 (1967). Because these agreements are contracts, a court is to "give effect to the mutual intention of the parties as it existed at the time of contracting," and "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity." Cal. Civ. Code §§ 1636, 1638. The GIA signed by Travelers and the Indemnity Defendants is an indemnity agreement, construed and enforced by this Court as a contract under California law.

The Indemnity Defendants insist that this Court should consider evidence of a purported oral agreement between the parties, which calls into question the very existence of the GIA. While the language of a contract generally governs its interpretation, parol evidence is admissible to reasonably explain ambiguities, but not to supplement or contradict a contract's actual terms. *See e.g., Singh v. Southland Stone, Inc.*, 186 Cal. App. 4th 338, 352, 112 Cal. Rptr. 3d 455 (2010). In this case, the Indemnity Defendants argue that the evidence of the alleged oral agreement is admissible because "parol evidence related to conditional delivery of a contract does not seek to alter its terms; it goes to the question of delivery." *Opp'n* at 5:2-3. What the Indemnity Defendants' overlook, however, is that when parol evidence relates to the delivery of a contract, but also contradicts a term of the contract, that evidence is inadmissible. *See Hanrahan-Wilcox Corp. v. Jenison Mach. Co.*, 23 Cal. App. 2d 642, 645, 73 P.2d 1241 (1937).

The court in *Hanrahan-Wilcox* dispensed with arguments strikingly similar to those advanced by Indemnitor Defendants. After first reciting the rule that evidence of an oral agreement to a condition precedent is admissible, the court added that the rule only applies "if there is nothing in the writing inconsistent therewith." *Id.* at 646. The *Hanrahan-Wilcox* court refused to allow evidence of an alleged unfulfilled condition to a contract because the "oral agreement . . . by adding a condition, contradict[ed] the provision of the written agreement that it constituted the entire contract and that any change or modification must [have been] in writing and signed by both parties." *Id.* That is consistent with California statutory law which provides that "terms set forth in a writing intended by the parties as a final expression of their agreement . . . may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement." Cal. Code of Civ. P. § 1856. Parties' intent to create a final expression of their agreement is often memorialized as an "integration clause" like the one in *Hanrahan-Wilcox*. *See Hanrahan*, 23 Cal. App. 2d at 646.

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

It is undisputed that the GIA contains an integration clause reading: "There are no separate agreements or understandings which in any way lessen [Indemnity Defendants'] obligations as set above set forth." *Compl.*, Ex. A (the Indemnity Agreement). The wording of this particular integration clause makes any evidence offered as to a preexisting delivery agreement inherently contradictory, and therefore, inadmissible. Like in *Hanrahan*, the oral agreement that allegedly creates a condition precedent to the legal existence of the GIA necessarily conflicts with the term in the GIA indicating that there are no separate agreements. Also like in *Hanrahan*, the GIA contains a provision which states that "[t]he rights and remedies afforded to [Travelers] by the terms of this Agreement can only be modified by a written rider to this Agreement signed by an authorized representative of the Company." *Id.* Finally, under the alleged oral agreement, liabilities do not attach for the Indemnity Defendants until the set-aside account is fully funded. This, too, conflicts with the the GIA requirement that the Indemnity Defendants indemnify Travelers for any loss, which, among other things, includes "expense of any kind or nature" incurred "in connection with any Bond or this Agreement." Indemnity Defendants' evidence is inadmissible as it contradicts, rather than clarifies, the terms of the integrated GIA and does not follow the GIA's strict modification procedures.

Indemnity Defendants rely on *Verzan v. McGregor*, 23 Cal. 339 (1863), a case from the 1863 term of the California Supreme Court, for the notion that parol evidence is "admissible to show conditional delivery" of a contract. *Opp'n* 4:18-19. In *Verzan*, the defendants were hired to "widen, deepen," and conduct other work on a mining ditch owned by the plaintiff. *Verzan*, 23 Cal. at 340. Both parties entered into an agreement to do the work, but below the signature line was an unsigned "memorandum" giving the defendant a right of way to work on the ditch and a security interest in the ditch until payment was provided. *Id.* at 341. Relying on an earlier Massachusetts case about the validity of a memorandum attached to the bottom of a signed contract, *Heywood v. Perrin*, 10 Pick. 228 (Mass. 1830), the California Supreme Court concluded that it was acceptable for "either party to prove by parol evidence the time, when, the person by whom, and the circumstances under which the memorandum was affixed to the note." *Verzan*, 23 Cal. at 343 (*quoting Heywood*, 10 Pick. at 231). The question was whether the memorandum was part of the contract—*i.e.* whether it was added before the agreement was signed, after, or at the same time.

Defendants are right to conclude that the *Verzan* case is at least tangentially related to the current litigation. For example, the case sheds light on the issue of whether a purported agreement outside the literal terms of a contract is part of the parties' agreement. Nevertheless, the case is distinguishable and Defendants' reliance is misplaced. Notably, there is no

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

suggestion that the contract in *Verzan* contained an integration clause like the one in this case. In fact, one of the few cases in California explicitly dealing with both an outside agreement and an integration clause is *Hanrahan-Wilcox*, which the Court relies on in reaching its conclusion. Indemnity Defendants' reliance on *Varzan* for general propositions of law is correct, but the factual differences between that case and this dispute cannot be overlooked.

The admission of parol evidence under these circumstances is improper. As a result, the Court finds that the General Indemnity Agreement is a valid and enforceable contract, unmodified by a purported oral agreement. With that in mind, the Court now considers the remainder of Plaintiff's motion.

    2.    <u>Indemnity Defendants' Breach of Contract</u>

Under California law, a plaintiff asserting a breach of contract claim must prove (1) the existence of a contract, (2) performance by the plaintiff or excuse for nonperformance, (3) breach by the defendant, and (4) damage resulting from the breach. *First Comm. Mort. Co. v. Reece*, 89 Cal. App. 4th 731, 745, 108 Cal. Rptr. 2d 23 (2001). Plaintiff alleges that Indemnity Defendants' failure to indemnify losses and to provide collateral security for future liabilities breached the terms of the GIA. *See Mot.* 11:4-7.

In addition to their defense that the GIA is unenforceable, Indemnity Defendants make a number of arguments that the Court construes as a challenge to Travelers' performance of the GIA. First, Indemnity Defendants argue that Travelers' performance was inadequate because it issued the Bonds to the county without first verifying that the set-aside was fully funded. *See Opp'n.* 6:8. Second, Indemnity Defendants' maintain that Travelers' issuance of the Bonds without ensuring that the set-aside account was fully funded was a unilateral and material change in risk that, by law, discharges their indemnitor liability. *See id.* 6:22-24. Third, according to Indemnity Defendants, Travelers' performance under the GIA was negligent. *See id*. 10:22-24. None of Indemnity Defendants' arguments have merit.

All of the challenges asserted by Indemnity Defendants rely on the assumption that an oral agreement existed about fully funding the set-aside account. Travelers could not materially change the Indemnity Defendants' exposure to risk by failing to verify that a set-aside account was fully funded if there was no agreement that a set-aside account was to be fully funded. Nor could it negligently issue the Bonds by ignoring the status of the set-aside account when there was no agreement that a set-aside account must be fully funded before the Bonds could issue.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

And, as discussed above, Indemnity Defendants' do not present admissible evidence creating a genuine issue of material fact that such an oral agreement actually existed. Moreover, Indemnity Defendants do not dispute any other aspect of Travelers' performance.

The question then becomes whether Indemnity Defendants actually breached the GIA and, if so, whether damages resulted. The GIA requires that Indemnity Defendants "exonerate, indemnify and save [Travelers] harmless from and against all Loss." *Compl.*, Ex. A (the indemnity agreement). Loss is thoroughly defined to include "[a]ll loss and expense of any kind or nature, including attorneys' and other professional fees" incurred in connection with the issuance of the Bonds or enforcement of the GIA. *See id.* In addition, the GIA provides that Travelers "shall have the right, in its sole discretion, to determine for itself and Indemnitors whether any claim, demand or suit . . . in connection with or relating to any Bond shall be paid, compromised [or] settled . . . and its determination shall be final binding and conclusive upon the Indemnitors." *Id.*

It is undisputed that Granite, a sub-contractor, asserted a claim against the Bonds issued by Travelers for $3,903,735.32. *See Def's. SSUF* 16. It is also undisputed that Travelers first sought payment from Top Finance pursuant to the Funds Control Agreement, and when Top Finance failed to pay, Travelers notified the Indemnity Defendants of the amount owed and demanded payment. *Def's. SSUF* 17-18. Indemnity Defendants failed to provide payment and, to date, have not reimbursed Travelers for the amount paid to Granite. *Def's. SSUF* 19-22. As a result of Indemnity Defendants' failure to indemnify Travelers pursuant to the GIA, Travelers paid $5,315,864.60 to cover the principal, interest and delay damages owed to Granite. *Def's. SSUF* 22; *Mot.* 6:5-8. Travelers has also incurred $154,087.32 in attorneys' fees, consulting fees, costs and expenses related to the investigation, defense and settlement of all claims asserted against the Bonds. *Pl's. SSUF* 37. Clearly, Indemnity Defendants' did not satisfy their responsibility to indemnity Travelers for losses incurred under the GIA, resulting in Travelers' actual loss of over five million dollars. Summary judgment on the breach of contract claim is GRANTED in favor of Travelers in the amount of $5,469,951.92.

       3.      The Collateral Security Clause

The GIA also includes a collateral security provision requiring Indemnity Defendants to "deposit with [Travelers] upon demand, an amount as determined by [Travelers] sufficient to discharge any Loss or anticipated Loss," and that "[s]ums deposited with [Travelers] pursuant to this paragraph may be used . . . to pay such claim or be held by [Travelers] as collateral

**O**

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

## CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

security." *Compl.*, Ex. A (the indemnity agreement). Travelers is seeking specific performance of the collateral security provision for no less than six million dollars to cover pending and future liabilities related to the issuance of the Bonds. *See Mot.* 11:16-21.

Despite the fact that there is often no actual monetary loss at the time specific performance of a collateral security provision is sought, a court can nevertheless award the equitable relief. *See e.g.*, *Milwaukie Construction Co. v. Glens Falls Ins. Co.*, 367 F.2d 964, 968 (9th Cir. 1966) (affirming award of collateral security to surety); *General Ins. Co. of Am. V. Singleton*, 40 Cal. App. 3d 439, 442, 115 Cal. Rptr. 291 (1974) (awarding collateral security under a bond agreement). In fact, "[s]ureties are ordinarily entitled to specific performance of collateral security clauses" because "[i]f a creditor is to have the security position for which he bargained, the promise to maintain the security must be specifically enforced." *Safeco Ins. Co. of Am. v. Schwab*, 739 F.2d 431, 433 (9th Cir. 1984) (internal citation omitted). Specific performance can be awarded on a motion for summary judgment. *See United States Fid. and Guar. Co. v. Stanley Contracting, Inc.*, 303 F. Supp. 2d 1169 (D. Ore. 2004) (granting summary judgment and awarding specific performance of collateral security provision in an amount agreed upon by the parties).

Travelers is seeking collateral security for two main potential liabilities: (1) a pending suit against it by Arena Landscaping for $289,521.75 plus costs, interest and fees; and (2) the cost of completing the Project as demanded by the County of Riverside. *See Mot.* 6:9-13, 20-25.

According to Travelers, the County has estimated that it will cost over eleven million dollars to complete work on the Project, but Travelers is seeking only six million dollars as collateral security to cover both the pending lawsuit and the cost to complete the Project. *Id.* at 13:16-21. Indemnity Defendants contest the estimated amount to complete the Project, but offer no evidence to that end, whereas Travelers offers the declaration of Patrick Toulouse, senior claims counsel for Travelers. *See Toulouse Decl.* ¶¶ 24, 35. But the exact amount sought by Travelers under the collateral security provision is of no significant consequence; by ordering specific performance, the Court is only telling the parties to do what they contracted to do. In this case, the Indemnity Defendants agreed that if Travelers asked for collateral security, they would provide it. And, a surety is allowed to seek security against future loss so long as long the surety's beliefs are reasonable. *See Milwaukie Const. Co.*, 367 F.2d 964, 944 (internal citation omitted).

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Travelers is currently defending a suit against it brought by Arena—an adequate and reasonable ground for seeking collateral security. Moreover, Travelers is now responsible for the completion of the Project. The County originally required over twenty million dollars in Bonds for the Project, and after some work has been completed, an estimated 11 million dollars worth of work remains. A senior claims counselor for Travelers, a person with personal knowledge of the Project, estimates that it can complete the project for 3 to 6 million dollars. That amount is also an adequate and reasonable ground for seeking collateral security. *See Toulouse Decl.* ¶ 35. Travelers is therefore entitled to specific performance of the collateral security provision of the GIA in the amount of six million dollars. As with any collateral security agreement, Travelers must return any unused funds obtained via the collateral security provision. *See Safeco*, 739 F.2d at 433.

    4.    <u>Quia Timet</u>

Quia timet (literally "because he fears") gives a court the equitable power, at the request of a surety, to seize funds owed and apply them to a debt if the surety can show that "the debts are currently due, the principal is unable or refuses to pay them, and if they are not paid[,] the surety will become liable." *Western Cas. & Sur. Co. v. Biggs*, 217 F.2d 163, 165 (7th Cir. 1954). In other words, quia timet is "the right of the surety to compel its principal to place the surety 'in funds' sufficient to prevent anticipated future losses, where a surety has reasonable grounds to believe that its principal will not perform his obligations." *Abish v. Northwestern Nat. Ins. Co.*, 924 F.2d 448, 450-51 (2d Cir. 1991).

In this case, Travelers' claim under the doctrine of quia timet is duplicative of its request for specific performance of the collateral security provision of the GIA. It is established that Travelers has reasonable, anticipated future losses and it is undisputed that Indemnity Defendants have refused to post the requested security. *See Pl's. SSUF* 34. To the extent that Travelers is entitled to the collateral security it is seeking, summary judgment on this count is GRANTED. Quia timet in this case, however, is not an independent ground for recovery and Travelers cannot obtain the same security twice.

    5.    <u>Declaratory Relief</u>

Travelers, in the alternative, moves for summary judgment on its claim for declaratory relief. *Mot.* 15:15. The Declaratory Judgment Act gives district courts discretion to exercise its jurisdiction over a claim for declaratory relief. *See* 28 U.S.C. § 2201. "The object of the statute

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

is to afford a new form of relief where needed and not to furnish a litigant with a second cause of action for the determination of identical issues." *California Ins. Guar. Ass'n. v. Superior Court*, 231 Cal. App. 3d 1617, 283 Cal. Rptr. 104, 108 (Ct. App. 1991). Moreover, "[d]eclaratory relief operates prospectively to declare future rights, rather than to redress past wrongs." *Canova v. Trs. of Imperial Irrigation Dist. Employee Pension Plan*, 150 Cal. App. 4th 1487, 1497, 59 Cal. Rptr. 3d 587 (2007). Because the Court has already ruled on the validity of the GIA and Indemnity Defendants' responsibility to perform under the collateral security provision, Travelers' claim for declaratory relief is merely a "second cause of action for the determination of" issues already decided. The Court, therefore, DENIES Travelers' motion for summary judgment on its claim for declaratory relief.

    6.  <u>Breach of the Funds Control Agreement by Top Finance and Dynamic Finance</u>

In its sixth and seventh causes of action, Travelers seeks damages from both Top Finance and Dynamic Finance ("Finance Defendants") for breach of their respective Funds Control Agreement. *Compl.* ¶¶ 65-72. Finance Defendants point out, however, that Travelers' claims for damages are too speculative to justify granting its motion for summary judgment on these claims. *Finance Opp'n*. 10:21-24. At this stage, the Court agrees.

As mentioned, in order to prove breach of contract, a plaintiff must show the damages caused by the breach. *See Lewin v. Miller Wagner & Co.*, 151 Ariz. 29, 34 (Ariz. Ct. App. 1986).[3] Damages that are "speculative, remote or uncertain may not form the basis of a judgment." *See id.*

Travelers first seeks recovery of damages in the amount of $5,315,864.60, the amount it paid to Granite. *See Mot.* 17:6-15. What is not clear, however, is from which party Travelers seeks payment. In the Complaint, Travelers asserts claim six against Dynamic Finance, and claim seven against Top Finance, both for breach of their respective Funds Control Agreement and for "an amount equal to the amount Travelers incurs and will incur as a result" of each party's breach. *Compl.* 19:10-22 (Prayer for Relief). While Travelers' motion for summary judgment is slightly more clear—$5,315,864.60—Travelers does not provide any evidence as to

---

[3] Funds Control Agreement paragraph 3(g) explicitly states that "this Agreement shall be governed by, construed and enforced in accordance with the laws of the State of Arizona." *See Toulouse Decl.*, Exs. B & C.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

which party is responsible for that amount or why it is entitled to the same amount from both the Indemnity Defendants and the Finance Defendants. Because the Court would only speculate as to the amount each Finance Defendant is responsible for, summary judgment is not appropriate against either of the Finance Defendants for the amount Travelers paid to Granite.

Second, Travelers argues that the Finance Defendants are obligated to "post no less than $6,000,000 as collateral" to complete the Project and pay Arena, should Arena obtain judgment in the pending lawsuit. *Mot.* 17:11-12. In relevant part, the Funds Control Agreement provides:

> [I]f [Desert Gold] fails to complete and/or pay for the [Project] as required by the County under the Bonds, all Off-Site Funds remaining in the Off-Site Account shall be immediately available to [Travelers] to complete and/or pay for the cost of the [Project]. Lender [Top Finance or Desert Finance] will have no obligation to disburse these…funds to [Travelers] unless Lender receives [Travelers'] written demand and certification…that [Desert Gold] has not or is not satisfactorily completing and/or paying for the construction of the [Project], and that the County and/or other Bond beneficiary(ies) have made demand on [Travelers] pursuant to the terms of the Bonds.

*Toulouse Decl.*, Exs. B & C, ¶ 2(g). While this provision appears to give Plaintiff the right to collateral security, the Court is in the same position of having to speculate as to what portion of the $6,000,000 each Finance Defendant is responsible for. Neither the Complaint or the motion papers provide any guidance, and such speculation makes summary judgment inappropriate.

As a result, summary judgment on the claims asserted against the Finance Defendants is DENIED.

       7.      <u>Frenchs' and Oliphants' Counterclaims</u>

Finally, Travelers seeks summary judgment on the counter-claims asserted by Dennis and Sharon French, and Richard and Janice Oliphant. The Counter-Claimants' four claims against Travelers are for: (1) rescission of the indemnity agreement for failure of consideration; (2) estoppel; (3) breach of fiduciary duty; and (4) rescission based on mutual mistake of fact.

          a.      <u>Rescission</u>

**O**

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Counter-Claimants seek rescission of the GIA for failure of consideration and mutual mistake of fact. *Counter-claimants Answer & Countercl.* ¶¶ 20, 38. The basis for both claims for rescission is the existence of the purported oral agreement. For example, Counter-Claimants' failure of consideration argument is premised upon Travelers' purported agreement not to issue the Bonds until the set-aside account was fully funded. *See id.* ¶¶ 18, 20. When Travelers' issued the Bonds, according to the counter-claim, the set-aside was not funded and Counter-claimants did not get what they bargained for. *See id.* ¶ 20. The mutual mistake of fact argument is similar and based on Travelers' delivery of the GIA without the set-aside being fully funded. *See id.* ¶¶ 37-38.

The Court has already considered the validity of the GIA, and the earlier determination that the GIA is valid as written and agreed to is dispositive with respect to the Frenchs' and Oliphants' counter-claim. Specifically, Paragraph 16 of the GIA states: "The failure to sign or the improper execution of a Bond shall not affect [Travelers'] rights under this Agreement, and the Indemnitors waive any claim they may have, now or at any time in the future, arising out of the failure to sign or properly execute a Bond." *Compl.*, Ex. A (the indemnity agreement). Because Counter-Claimants' argument is that Travelers' improperly issued the bonds, and because the GIA is valid and enforceable, Counter-Claimants' claims for rescission is barred by the terms of the GIA. Summary judgment in favor of Travelers is GRANTED, accordingly.

      b. <u>Estoppel</u>

Counter-Claimants also argue that Travelers should be estopped "from seeking recourse" under the GIA because Travelers acted in bad faith and was negligent in issuing the Bonds without ensuring that the set-aside account was fully funded, thereby "exposing [Counter-claimants] to additional risk on the [GIA] without their consent." *See id.* ¶¶ 26-27.

Under the doctrine of equitable estoppel, "[w]henever a party has, by his own statement or conduct, intentionally and deliberately led another to believe a particular thing true and to act upon such belief, he is not, in any litigation arising out of such statement or conduct, permitted to contradict it." *Bailey v. Outdoor Media Group,* 155 Cal. App. 4th 778, 790, 66 Cal. Rptr. 3d 322 (2007). Thus, for equitable estoppel to apply, there must be "(1) a representation or concealment of material facts (2) made with knowledge, actual or virtual, of the facts, (3) to a party ignorant, actually and permissibly, of the truth, (4) with the intent, actual or virtual, that the latter act upon it, and (5) the party must have been induced to act upon it." *Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Counter-Claimants' second claim fails for the same reason that the first claim fails. Counter-Claimants expressly waived their right to complain about Travelers' improper execution of the Bonds and cannot now cloak their challenge to the GIA in the terms of estoppel. *See Compl.*, Ex. A ¶ 15 (the indemnity agreement). Summary judgment is therefore GRANTED in favor of Travelers on count two of the counter-claim.

c. Breach of Fiduciary Duty

Finally, Counter-Claimants argue they were in a fiduciary relationship with Travelers and that Travelers breached its fiduciary duty by its "actions and/or failures to act with regards to the establishment of the controlled set-aside fund." *Counterclaimants Answer & Countercl.* ¶ 29. Not only could Travelers' not breach a fiduciary duty by not adhering to an agreement that did not exist, but Travelers is not a fiduciary of the Counter-Claimants.

"The elements of a cause of action for breach of fiduciary duty are: (1) the existence of a fiduciary duty; (2) the breach of that duty; and (3) damage proximately caused by that breach." *Mosier v. Southern Cal. Physicians Ins. Exch.*, 63 Cal. App. 4th 1022, 1044 (1998). The first element—the existence of a fiduciary duty—has not been established in this case. The California Supreme Court has distinguished insurers from sureties and stated that surety bonds, unlike insurance policies, are not characterized by "elements of adhesion, public interest, or fiduciary responsibility." *Cates Constr. Inc. v. Talbot Partners*, 21 Cal. 4th 28, 56, 60, 86 Cal. Rptr. 2d 855 (1999). Moreover, "there is little basis for concluding that the relationship between a surety and an obligee is fiduciary or quasi-fiduciary in nature . . . [and] to the extent such responsibilities give rise to fiduciary or quasi-fiduciary obligations in the liability insurance setting, their absence in surety arrangements supports a different result." *Id.* at 56. As Counter-Claimants have failed to establish the existence of a fiduciary relationship with Travelers, their claim for breach of fiduciary duty must fail. As a result, summary judgment is GRANTED in favor of Travelers on Counter-Claimants' third cause of action.

B. Paul Lewis and Desert Empire's Motion for Summary Judgment

Also pending before the Court is Cross-Defendants Paul Lewis and Desert Empire's Motion for Summary Judgment on all claims asserted against them by Cross-Claimants Dennis French and Richard Oliphant. The cross-claims are for (1) fraud; (2) negligent misrepresentation; and (3) equitable indemnity. Once again, the validity of an alleged oral agreement to ensure that the set-aside account was fully funded is at center stage. For example,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

cross-claimants allege that cross-defendants committed fraud by promising that they would not deliver the indemnity agreement to Travelers until the funds had "actually been set aside and irrevocably committed" to the account. *FACC* ¶ 67D. The claim for negligent misrepresentation is much of the same. *Id.* ¶¶ 75-76 ("[c]ross-claimants gave the [GIA] to Cross-Defendants with the express understanding that the [GIA] would not be delivered to Travelers until all of the above representations, promises and warranties were, in fact, satisfied"). While the Court has determined that there is no genuine issue of material fact about the alleged promise to fully fund the set-aside account made by Travelers, the question of separate, but similar, promises allegedly made by cross-defendants is not resolved by that earlier determination.

Paul Lewis, an insurance broker working for Desert Empire, had a "long time" business relationship with French and Oliphant. *Cross-Claim Opp'n* 3:7. When French and Oliphant approached Lewis for help securing the bonds for the Project, Lewis agreed to assist, but did not "hold himself out as an expert" in the field of bonding. *Lewis Mot.* 7:10. Lewis contacted Doug Rothey, an agent for Travelers, who walked the parties through all the steps necessary to get the bonds. *Id.* Despite getting Rothey to assist, Lewis allegedly "agreed and undertook to have the GIA only become effective if all conditions to the transaction were met, including the funding of the set aside controlled account." *Cross-Claim Opp'n* 3:7-10. This agreement, separate and apart from the alleged agreements made by Travelers, is the basis of French and Oliphant's fraud, negligent misrepresentation and equitable indemnity claims. For the reasons that follow, the Court grants in part and denies in part Cross-Defendants Lewis and Desert Empire's Motion for Summary Judgment.

        1.        <u>Statute of Limitations</u>

Lewis and Desert Empire argue that French and Oliphant's claims for fraud and negligent misrepresentation are barred by the applicable statute of limitations. *See Lewis Mot.* 11:25-26. The Court disagrees.

In *Hydro-Mill Co. v. Hawyard, Tilton and Rolapp Ins. Assocs., Inc.*, 115 Cal. App. 4th 1145, 10 Cal. Rptr. 3d 582 (2004), the California Court of Appeals held that "a cause of action for negligent misrepresentation is barred by the two-year statute of limitations (§ 339) where the allegations amount to a claim of professional negligence." 115 Cal. App. 4th at 1154. The facts of that case are similar to facts in this case. There, the complaint alleged that the defendant, an insurance broker, did not obtain the insurance coverage requested by the Plaintiff and "falsely represented" that it had been obtained. *Id.* Here, Lewis allegedly agreed to obtain the bonds for,

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

among others, French and Oliphant, and falsely represented that the issuance of the bonds was subject to certain conditions. *Cross-Claim Opp'n* 3:7-10. French and Oliphant's resulting claim for negligent misrepresentation is clearly one for professional negligence, and like in *Hydro-Mill Co.*, is subject to a two-year statute of limitations. *See Hydro-Mill Co.*, 115 Cal. App. 4th at 1154; Cal. Code Civ. P. § 339.

Lewis and Desert Empire argue that because "Oliphant testified that he affirmatively knew and understood that the funds had been removed from the 'irrevocable' set-aside account" before August 3, 2007, and because the Cross-Complaint was filed on September 2, 2009, the two year statute of limitations bars French and Oliphants' claims. *Lewis Mot.* 13:8. French and Oliphant, on the other hand, maintain that even if a two-year statute of limitations applies, it does not bar the claims here because the statute only begins to run "when the cause of action is complete with all of its elements," and not all of the elements of the claim have been established. *See Cross-Claim Opp'n* 5:1-2 (quoting *Williams v. Hilb, Rogal & Hobbs*, 177 Cal. App. 4th 624, 89 Cal. Rptr. 3d 910 (2009)). Specifically, they argue that they never suffered any damages "until Travelers attempted by this action to enforce the wrongfully delivered GIA . . . [p]rior to that time, the claim was speculation." *Id.* 5:19-24.

It is true that "a cause of action for professional negligence does not accrue until the plaintiff (1) sustains damage and (2) discovers, or should discover, the negligence." *Hydro-Mill Co.*, 115 Cal. App. 4th at 1161. French and Oliphant are correct in arguing that they did not suffer damages, thus completing their cause of action, outside of the statutory period. By way of example, the court in *Williams v. Hilb, Rogal & Hobbs Ins. Services of California* explained that "a cause of action against an insurance broker who negligently secured automobile liability insurance in an amount less than that ordered by the car owner, accrued when judgment was entered in a personal injury action in excess of the plaintiff's insurance-*not* when the automobile accident occurred, and not when the personal injury action was filed." 177 Cal. App. 4th at 641. Even though, as Lewis and Desert Empire argue, French and Oliphant may have discovered that there was no money in the set-aside account in August of 2007, French and Oliphant's personal liability was nothing but speculation until, at the earliest, Travelers sought to recover the funds from them under the GIA. The first letter sent by Travelers to that effect was on March 20, 2009. *See Toulouse Decl.*, Ex. E (letter from Travelers to the Indemnity Defendants, including French and Oliphant, demanding collateral under the GIA). Because the Cross-Complaint was filed on September 2, 2009, it was within the two-year statute of limitations for professional negligence claims in California.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Lewis and Desert Empire also argue that the claim for fraud is barred by Cal. Code Civ. P. § 339's two year statute of limitations because it, too, is nothing more than a claim for professional negligence. *Lewis Mot.* 12:12-14. Negligence and fraud, however, are two different theories upon which recovery can be based. That a fraud claim might arise out of a professional relationship does not automatically make it a claim for professional negligence. In fact, fraud is subject to a separate three year statute of limitations under Cal. Code Civ. P. § 338, which accrues upon the "discovery, by the aggrieved party, of the facts constituting the fraud." Cal. Code Civ. P. § 338. If the fraud was discovered by French and Oliphant in August of 2007, as Lewis and Desert Empire suggest, *see Lewis Mot.* 12:27-13:3, the claims for fraud are not barred.

As a result, neither the claims for fraud nor negligent misrepresentation are barred by the applicable statute of limitations.

> 2. <u>There are Triable Issues of Fact as to the Alleged Fraudulent and Negligent Misrepresentations in the Cross-Claim</u>

Cross-Defendants Lewis and Desert Empire assert that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law on French and Oliphant's cross-claims for fraud and negligent misrepresentation. Specifically, they argue that (1) "the alleged misrepresentations in the cross-claim contradict facts known to French and Oliphant," (2) "there are no triable issues of fact that French or Oliphant justifiably relied upon statements made by Lewis," and (3) "French and Oliphant cannot prove 'actual reliance' because nothing Lewis said or did was a substantial factor in causing French and Oliphant's damages." *See Lewis Mot.* 13:15-16; 15:13-14; 23:10-12. The Court disagrees and finds that there are triable issues of facts with respect to the alleged misrepresentations.

French and Oliphant allege that Lewis and Desert Empire either negligently misrepresented or fraudulently misrepresented the following:

> (1) That the Set-Aside Agreement had been executed by all parties to the agreement and that the sum of $16,860,300 was earmarked and irrevocably committed to pay for the Off-Site Improvements and these funds could be used for no other purpose;

> (2) The funds were being administered by an independent third party disbursement agent;

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

(3) That if DGV failed to complete [or] pay for the Off-Site Improvements as required by the County of Riverside under the bonds that the Off-Site Funds would be immediately payable to Travelers to complete and/or pay for the cost of said Off-Site Improvements; and

(4) That Cross-Claimants indemnity would not be delivered to Travelers and would not become effective until the funds had actually been set aside and irrevocably committed to the payment of these Off-Site Improvements so that Cross-Claimants would not have any exposure or liability whatsoever under the Indemnity Agreement to otherwise pay for the Off-Site Improvements.

*FACC* ¶ 67.  Each of the above misrepresentations allegedly induced French and Oliphant to "execute[e] and deliver[]" the GIA.  *Id.*

The elements for a fraud claim are (1) a misrepresentation, (2) knowledge of falsity, (3) intent to defraud, i.e., to induce reliance, (4) justifiable reliance, and (5) resulting damage.  *Buckland v. Threshold Enterprises, Ltd.,* 155 Cal. App. 4th 798, 806-07, 66 Cal. Rptr. 3d 543 (2007).  The requirements of a claim for negligent misrepresentation generally coincide with those for fraud, except that they do not include knowledge of falsity or intent to defraud.  *See id.; Platt Electrical Supply, Inc. v. Eoff Electrical, Inc.,* 522 F.3d 1049, 1055 (9th Cir. 2008).

First, there is evidence that the above misrepresentations were made in order to induce French and Oliphant into executing and delivering the GIA.  For example, French and Oliphant's declarations are similar in substance and provide that neither French nor Oliphant "would sign a GIA unless there was a fully funded Set Aside of the Funds necessary to pay for the road improvements in order to eliminate [their] exposure and liability the event of default . . . Paul Lewis agreed."  *French Decl.*, ¶ 6; *see also Oliphant Decl.*, ¶¶ 7-10.  Lewis and Desert Empire counter and argue, in part, that one of the misrepresentations is no more than a provision in the Set Aside Agreement, not a representation made by either of them.  *See Lewis Mot.* 14:20-23.  Even if the statement is a provision in the Set Aside Agreement, French and Oliphant present evidence that it is also a misrepresentation made by Lewis and Desert Empire.  In addition, Oliphant goes on to state that "[d]elivery of the GIA's were always contingent on a Fully Funded Set Aside," and that Paul Lewis agreed to that condition "before [Oliphant] agreed that the GIA could be delivered to Paul Lewis for use by Travelers [if] GIA would not be released to Travelers until the Set Aside was fully funded."  *See Oliphant Decl.* ¶¶ 9-10.  French and

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

Oliphant present admissible evidence creating a material dispute of fact that they were induced into signing and delivering the GIA by the misrepresentations alleged in the Cross-Complaint.

Lewis and Desert Empire maintain that summary judgment is nevertheless appropriate because even if there were misrepresentations, there is no causal connection between the misrepresentations and any resulting damages, and that any reliance was unreasonable. *See Lewis Mot.* 23:13-24:21; 15:15-17. The Court disagrees with both points.

In order for a misrepresentation to "cause" any later damages, the misrepresentation must be a "substantial factor" in brining about the harm to the complaining party. *See Mitchell v. Gonzales*, 54 Cal. 3d 1041, 1052-53, 1 Cal. Rptr. 2d 913 (1991). Misrepresentations "need not be established as the sole cause of the . . . loss, but the plaintiff must show by the evidence presented that a result was more likely than not caused by a wrongful act or omission." *Williams v. Wraxall*, 33 Cal. App. 4th 120, 132, 39 Cal. Rptr. 2d 658 (1995). In this case, French and Oliphant state that they never would have signed the GIA and given it to Lewis if he did not assure them that the Set Aside had been established and that funds would be available to Travelers in the event of default. *See French Decl.*, ¶ 6 ("I told Paul Lewis that neither I nor Richard R. Oliphant would sign a GIA unless there was a fully funded Set Aside of the Funds . . . in order to eliminate our exposure and liability in the event of default . . . Paul Lewis agreed."); *Oliphant Decl.*, ¶ 10 ("Delivery of the GIA's were always contingent on a Fully Funded Set Aside and if there were no Fully Funded Set Aside, then the GIA would never become effective and would not be used."); *see also Cohen Decl.*, Ex. A at 35:19-36-7 (Oliphant Deposition) ("We would have never guaranteed this thing if this wasn't a sure, sure thing, the money was there ready to be spent . . . we were not told all the information or the right information."). French and Oliphant provide evidence that but for Lewis and Desert Empire's misrepresentations they would not have signed and delivered the GIA, thereby exposing themselves to the liability at issue in this litigation.

In addition, there is a triable issue of fact as to the reasonableness of French and Oliphant's reliance, despite Lewis and Desert Empire's insistence to the contrary. Lewis and Desert Empire argue that any reliance on the alleged misrepresentations was unreasonable because: (1) Lewis was not an expert in obtaining bonds, whereas French and Oliphant had many years of experience in the construction industry; (2) French and Oliphant were represented by counsel throughout the bond process; and (3) because French and Oliphant did not rely on any representations made by Lewis or Desert Empire as shown by their execution of the GIA

O

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

with its integration clause. *See Lewis Mot.* 16:9-22.[4] Reasonable reliance, however, is "ordinarily a question of fact." *Guido v. Koopman*, 1 Cal. App. 4th 837, 843, 2 Cal. Rptr. 2d 437 (1991). In fact, a court may enter summary judgment on the issue of reasonable reliance in cases of fraud only if "reasonable minds can come to only one conclusion based on the facts." *Id.* Lewis and Desert Empire's evidence that French and Oliphant were represented by counsel, or that they were more experienced in the bonding process, suggests that reliance was unreasonable. Nevertheless, French and Oliphant's evidence that they, in fact, were not represented by counsel, *see Hodges Decl.*, ¶ 3, and that they relied on their insurance and bonding agent who had worked with them on "many projects over the years," *see French Decl.*, ¶ 3, suggests that such reliance was reasonable. The Court cannot conclude that reasonable minds can come to only one conclusion on French and Oliphant's reliance, and therefore, summary judgment is inappropriate.

French and Oliphant have provided evidence creating a genuine issues of fact for trial. As a result, the Court DENIES summary judgment on the eighth and ninth claims in French and Oliphant's First Amended Cross-Complaint.

### 3. Equitable Indemnity

Finally, the tenth claim in French and Oliphant's cross-claim is for equitable indemnity against, *inter alia*, Lewis and Desert Empire. *See FACC* ¶¶ 78-79. Specifically, French and Oliphant seek equitable indemnity from all Cross-Defendants "according to their respective fault," if and when "Travelers recovers any sum of damages against Cross-claimants." As a matter of law, however, French and Oliphant are not entitled to such relief. Travelers' suit is based on breach of the GIA, a contract, and "California law does not permit equitable

---

[4] In the Motion for Summary Judgment, Lewis and Desert Empire also argue that there is no agency relationship between Lewis and French or Oliphant that would give rise to a duty potentially creating liability. *See Lewis Mot.* 19:7-10. Specifically, they mistakenly argue that any agency agreement must have been in writing according to the "equal dignity rule." *Id.* However, this rule only applies if the purpose of the agency relationship is to "enter into a contract required by law to be in writing." *Van't Rood v. County of Santa Clara*, 113 Cal. App. 4th 549, 571, 6 Cal. Rptr. 3d 746 (2003). Neither party asserts that Lewis was to enter into a contract on French or Oliphant's behalf, or that French or Oliphant were to enter into a contract on Lewis' behalf; Lewis was only to assist in obtaining the bonds. Thus, the "equal dignities rule" does not apply.

**O**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 09-4224 PSG (AJWx) | Date | November 19, 2010 |
|---|---|---|---|
| Title | Travelers Casualty and Surety Company Of America v. Desert Gold Ventures, LLC, *et al.* | | |

apportionment of damages for breach of contract." *Stop Loss Ins. Brokers, Inc. v. Brown & Toland Medical Group*, 49 Cal. Rptr. 3d 609, 612, 143 Cal. App. 4th 1036 (2006). Whatever losses French and Oliphant incur as a result of their breach of the GIA are theirs alone, not subject to apportionment. Summary judgment on the tenth cause of action in the cross-claim for equitable indemnity is GRANTED.

IV.     Conclusion

Travelers' and Lewis and Desert Empire's Motions for Summary Judgment are GRANTED in part and DENIED in part as set forth below:

1.  Travelers' claims against Defendants

    a.  Breach of Contract – GRANTED
    b.  Quia Timet – GRANTED
    c.  Declaratory Relief – DENIED
    d.  Breach of Contract against Top Finance – DENIED
    e.  Breach of Contract against Dynamic Finance – DENIED

2.  Counterclaims asserted against Travelers by French and Oliphant

    a.  Rescission of the GIA for failure of consideration – GRANTED
    b.  Estoppel – GRANTED
    c.  Breach of Fiduciary Duty – GRANTED
    d.  Rescission of the GIA for mutual mistake – GRANTED

3.  Lewis and Desert Empire's Motion for Summary Judgment

    a.  Fraudulent and Negligent Misrepresentations – DENIED
    b.  Equitable Indemnity – GRANTED